UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                 :
SAVEENE CORP.,                            :
                                 Plaintiff,    :
                                                 :           21 Civ. 399 (LGS)
                  -against-                         :
                                                 :           **OPINION AND ORDER**
ERNEST B. REMO, AMERICAN          :
DIVERSIFIED HOLDINGS CORP., ACTION :
STOCK TRANSFER CORP. AND OTC      :
MARKETS GROUP INC.,                   :
                                         Defendants.  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Saveene Corp. filed suit against Defendants Ernest B. Remo, American Diversified Holdings Corp. ("ADHC"), Action Stock Transfer Corp. ("AST") and OTC Markets Group Inc. ("OTC") alleging that Remo stole the identity of ADHC, and that the other defendants facilitated the theft. Defendants AST and OTC move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motions are granted.

## I. BACKGROUND

The following facts are taken from the Complaint and are assumed to be true for purposes of this motion. *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020).

### A. Stock Purchase Agreement

On or about June 6, 2019, then-CEO Remo agreed to sell his controlling interest in ADHC to Plaintiff pursuant to a stock purchase agreement. Pursuant to that agreement, Remo assumed a number of obligations regarding the transition of ADHC's strategy and management as a result of the sale, including the resignation of existing management. On or about June 6, 2019, Remo's controlling interest in ADHC was transferred to Plaintiff through ADHC's stock

transfer agent, AST, and Remo resigned as CEO. Plaintiff controlled ADHC without interference until the spring of 2020. At the time of the sale, ADHC was incorporated in Nevada and traded on OTC.

### B. Dissolution of ADHC and Creation of ADHC Wyoming

On April 27, 2020, Remo formed a new company in Wyoming called American Diversified Holdings Corporation ("ADHC Wyoming"). The Wyoming State filing did not indicate that the entity previously existed or had relocated or "merged out." On or about April 28, 2020, Remo dissolved ADHC in Nevada. According to the Complaint, in Nevada, "any third party may dissolve an entity without proof of control or being an officer or Director . . . so long as a small filing fee is paid and proper paper work is filed." That same day, Remo contacted Plaintiff to inquire about the status of ADHC and expressed interest in liquidating his shares. Plaintiff reminded Remo that his sale of a controlling block of shares had closed with no recourse or survival clauses.

### C. Plaintiff's Efforts to Regain Control of ADHC and OTC Filings

Following the dissolution of ADHC, on or about July 3, 2020, Plaintiff demanded that Remo immediately cease and desist from interfering with ADHC and reinstate ADHC in Nevada. Plaintiff made efforts to resolve the matter for several months thereafter prior to bringing this action. Plaintiff also sought assistance from AST, but AST did not respond to emails or telephone calls from ADHC. The Complaint alleges that AST accepted payment from Remo for an outstanding bill of ADHC, acknowledged Remo's interest in ADHC and granted Remo access with OTC as "The ADHC A Nevada Co."

On or about September 10, 2020, Plaintiff caused ADHC to file a Form 8-K reporting that Remo had hijacked the company, and that management was trying to resolve the matter

through legal or regulatory means. In December 2020, Remo made a number of filings for ADHC on OTC that he signed as CEO of ADHC. On or about December 10, 2020, Remo caused three quarterly reports to be filed with OTC. The reports did not reference Plaintiff's interest in ADHC and asserted that ADHC had redomiciled in Wyoming. An attorney, Morgan Petitti, submitted an opinion letter on December 15, 2020, certifying the reports as true and accurate. Plaintiff objected through an email on December 21, 2020, which included OTC. Remo caused the filing of a quarterly report on December 14 and two amended quarterly reports on December 22, 2020. These reports similarly claimed that ADHC had relocated and did not reference Plaintiff's interest. Petitti submitted a second opinion letter to OTC confirming the truth and accuracy of the quarterly reports. On or about December 24, 2020, Plaintiff notified OTC of Remo's actions and had not received a response at the time of the Complaint's filing.

Plaintiff filed this action on January 15, 2021. The Complaint asserts thirteen causes of action, including the following against movants AST and OTC: (i) Tortious Interference, (ii) Breach of Fiduciary Duty and (iii) Negligence.

## II. STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions couched as factual allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at

678. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

### A. OTC's Immunity Pursuant to the CDA

Accepting as true all of the allegations in the Complaint and drawing all reasonable inferences in favor of Plaintiff, the Complaint fails to state claims against OTC because OTC is immune from such claims under the Communications Decency Act of 1996 ("CDA"). Under the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). To qualify for immunity under the statute, the following three requirements must be met: (1) the defendant must be "'a provider or user of an interactive computer service'"; (2) "'the claim is based on information provided by another information content provider'" and (3) "'the claim would treat the defendant as the publisher or speaker of that information.'" *Herrick v. Grindr LLC*, 765 Fed. App'x 586, 589 (2d Cir. 2019) (quoting *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016)). Section 230(c)(1) is generally construed broadly in favor of immunity. *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019).

Though "[p]reemption under the Communications Decency Act is an affirmative defense, . . . it can still support a motion to dismiss if the statute's barrier to suit is evident from the face of the complaint." *Ricci v. Teamsters Union Loc. 456*, 781 F.3d 25, 28 (2d Cir. 2015) (internal quotation marks omitted); *accord Facebook, Inc.*, 934 F.3d at 63 n.15. The Complaint's claims against OTC focus on the allegation that OTC "permitted Remo to disseminate false

4

information" and "failed to properly investigate Remo and his fraudulent actions." Because Plaintiff's claims against OTC implicate OTC's publication of information in its capacity as an online trading platform, its potential immunity under the CDA is directly at issue and apparent from the face of the Complaint.

OTC satisfies all three requirements necessary to establish its immunity under the CDA. First, the Complaint alleges that OTC lists and provides an online trading platform for various stocks, including ADHC, and that OTC disseminates information on listed companies. Consequently, it is apparent from the face of the Complaint that OTC is an interactive computer service provider within the meaning of Section 230. *See also* Fed. R. Evid. 201 (permitting a court to take judicial notice of a fact that is generally known and can be determined from a source that cannot be reasonably questioned). The term "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a server or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). This definition has been construed broadly, *Ricci*, 781 F.3d at 28, and "[c]ourts typically have held that internet service providers, website exchange systems, online message boards, and search engines fall within this definition." *LeadClick Media, LLC*, 838 F.3d at 174.

Second, the Complaint's claims against OTC are based on information provided by another information content provider, namely Remo on behalf of ADHC. Plaintiff argues that the CDA was not intended to protect a trading platform such as OTC because OTC is not a "passive platform" as it "reviews and investigates" information published on its platform. This argument is unpersuasive. Although an internet service provider is not entitled to immunity

5

under the CDA if it is also an "information content provider" that "is responsible, in whole or in part, for the creation or development of information provided," *LeadClick Media, LLC*, 838 F.3d at 174 (quoting 47 U.S.C. § 230(f)), "a defendant will not be considered to have developed third-party content unless the defendant directly and 'materially' contributed to what made the content itself 'unlawful.'" *Facebook, Inc.*, 934 F.3d at 68 (quoting *LeadClick Media*, 838 F.3d at 174). Because the Complaint does not allege that OTC assisted in the development of or contributed to the quarterly reports Remo published on behalf of ADHC, OTC is not an "information content provider" barred from immunity under the CDA.

Third, Plaintiff's claims treat OTC as a "publisher or speaker" of information. Section 230 "'bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'" *LeadClick Media*, 838 F.3d at 174 (internal quotation marks omitted). Plaintiff's claims are based on OTC's dissemination of alleged false information and failure to remove and investigate such information. These actions fall squarely within OTC's discretion as a "publisher" of information on the Disclosure Service and are barred by the CDA. *Id.*

Because the claims against OTC are dismissed based on its immunity under the CDA, this Opinion does not address whether the Complaint fails to state a claim against OTC.

### B. Breach of Fiduciary Duty Claim Against AST

The Complaint alleges that AST breached its fiduciary duty to Plaintiff by "recognizing Remo as an officer of ADHC and recognizing ADHC Wyoming as an affiliate of ADHC." This claim is dismissed because the Complaint fails to plead facts sufficient to establish that AST owed Plaintiff a fiduciary duty.

The elements of a claim of breach of fiduciary obligation under New York law[1] are: (1) the existence of a fiduciary duty; (2) knowing breach of that duty; and (3) resulting damages. *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (internal citation omitted) (applying New York law); *accord Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P*, No. 14 Civ. 2065, 2015 WL 13654007 at *15 (S.D.N.Y. Mar. 26, 2015). A fiduciary relationship is established "between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *EBI I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005) (internal citation and quotation omitted); *accord Lynch v. Nat'l Prescription Adm'rs, Inc.*, 795 Fed. App'x 68, 69 (2d Cir. 2020) (summary order). "Put differently, a fiduciary relation exists when confidence is reposed on one side and there is a resulting superiority and influence over the other." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 980 (N.Y. 2009) (internal quotations omitted); *see also Sergeants Benevolent Ass'n Annuity Fund v. Renck*, 796 N.Y.S.2d 77, 79 (1st Dep't 2005) (relying on another's superior expertise or knowledge will establish a fiduciary relationship); *accord Appel*, 2015 WL 13654007 at *15. "Reliance, de facto control, and dominance are essential elements of a fiduciary relationship." *Lynch*, 795 Fed. App'x at 69. Such a relationship is fact specific and is grounded in a higher level of trust than is normally present between those involved in an arm's-length business transaction. *Sergeants Benevolent Ass'n Annuity Fund*, 796 N.Y.S.2d at 79.

---

[1] AST generally cited New York State law in its Memorandum of Law. Plaintiff did not cite any law and did not dispute the application of New York law to its common law claims. Where the parties agree to the application of a particular state's law, that law applies. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (applying New York law where the parties' memoranda of law assume that New York law governed the issues), *accord N.Y. Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 485 F. Supp. 3d 398, 404 n.5 (S.D.N.Y. 2020).

Plaintiff's breach of fiduciary duty claim rests on allegations that (1) AST had an ongoing business relationship with ADHC and (2) AST implicitly recognized Remo's resignation from ADHC and Plaintiff's subsequent acquisition of Remo's shares and appointment of officers. Although "a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)" due to the fact-specific nature of such a claim, *Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006), *accord Monterey Bay Mil. Housing, LLC v. Ambac Assurance Corp.*, No. 19 Civ. 9193, 2021 WL 1226984, at *19 (S.D.N.Y. Mar. 31, 2021), "[c]ourts do not hesitate to dismiss a claim . . . where the complaint alleges nothing more than an ordinary business relationship, or no relationship at all." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 500 n.11 (S.D.N.Y. 2017). AST's purported fiduciary duty to Plaintiff cannot be based on AST's relationship with ADHC. As to Plaintiff's relationship with AST, the extent of AST's interactions with Plaintiff, as alleged in the Complaint, are that AST transferred the shares from Remo to Plaintiff and, months after conducting the transfer, refused to respond to Plaintiff when it contacted AST about Remo's efforts to regain control of ADHC. Even accepting these allegations as true and drawing all reasonable inferences in favor of Plaintiff, these facts are insufficient to establish a fiduciary duty. Rather, the allegations indicate that AST's transfer of stock to Plaintiff was nothing more than an arm's-length business transaction that does not establish a fiduciary duty "[a]bsent extraordinary circumstances." *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002); *Ramiro v. Aviles*, 380 F. Supp. 3d 221, 304 (S.D.N.Y. 2019); *see also Big Apple Consulting USA, Inc. v. Belmont Partners, LLC*, 873 N.Y.S.2d 232 (Sup. Ct. 2008) (finding no factual or legal basis for establishing a fiduciary duty on the part of the transfer agent, analogizing it to the role of a broker in an arm's-length transaction between sophisticated parties); *Edwards & Hanly v. Wells Fargo Sec. Clearance Corp.*, 602 F.2d 478, 484 (2d Cir.

1979) ("[A] transfer agent, and similarly a clearing agent, is generally under no fiduciary duty to the owners of securities that pass through its hands."). The Complaint fails to allege any facts indicating that Plaintiff's relationship possessed any of the "essential elements" that give rise to a fiduciary relationship. *See Lynch*, 795 Fed. App'x at 69.

### C. Negligence Claim Against AST

The Complaint alleges that AST owed a duty to Plaintiff to perform properly services for ADHC, and that AST breached that duty by "negligently, carelessly or recklessly perform[ing] its obligations by among other acts recognizing Remo as an officer of ADHC and recognizing ADHC Wyoming as an affiliate of ADHC." This claim is dismissed as the Complaint does not allege facts sufficient to establish that AST owed Plaintiff a duty of care.

To recover on a claim for negligence under New York law, a plaintiff must show that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach. *Badilla v. Midwest Air Traffic Control Serv., Inc.*, 8 F. 4th 105, 131 (2d Cir. 2021) (construing New York law).

The Complaint's allegations that a duty exists rests on allegations that "AST was hired to perform services for ADHC" and that "[p]ursuant to the parties' agreements and applicable codes, rules and/or standards in the industry AST owed a duty to Saveene and ADHC to properly perform services for ADHC." Notwithstanding the Complaint's allegation that the parties' agreements establish a duty of care, Plaintiff argues in its Opposition that AST's duty to Plaintiff does not arise from AST's agreement with ADHC, but rather, "its participation in the transfer of Remo's stock to Plaintiff, AST's recognition of Remos's Resignation, AST's recognition of Plaintiff's acquisition and Plaintiff's appointed officers of ADHC." Plaintiff cannot amend its Complaint in briefing in opposition to a motion to dismiss. *Maldonado v. Town of Greenburgh*,

9

460 F. Supp. 3d 382, 398 n.12 (S.D.N.Y. 2020). Even if these allegations were in the Complaint, the facts are insufficient to establish that AST owed Plaintiff a duty of care. First, Plaintiff cannot establish a duty of care owed to Plaintiff based on AST's relationship with ADHC. "'Absent a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 516 (2d Cir. 2020) (applying New York law) (quoting *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc.*, 750 N.E.2d 1097, 1101 (N.Y. 2001)). Second, AST's role as stock transfer agent and alleged recognition of Plaintiff's interest in ADHC do not give rise to a duty of care to Plaintiff. There are no facts in the Complaint indicating that AST's facilitation of the stock transfer was anything more than an arm's-length business relationship, which, in general, does not create a duty of care between parties. *See OTG Brands, LLC v. Walgreen Co.*, No. 13 Civ. 09066, 2015 WL 1499559 at *10 (S.D.N.Y. Mar. 31, 2015) (applying New York law); *Blatt v. Touchstone Television Products, LLC,* 943 N.Y.S.2d 108, 109 (4th Dep't 2012).

### D. Tortious Interference with Business Relations Claim Against AST

The Complaint alleges that AST tortiously interfered with Plaintiff's business relations with ADHC and its shareholders and investors by "recognizing Remo as an officer and recognizing ADHC Wyoming as an affiliate of ADHC." This claim is dismissed as the Complaint does not sufficiently allege facts to show that AST intentionally interfered with Plaintiff's relationships with ADHC and its shareholders and investors.

To state a claim for tortious interference with prospective economic advantage under New York law, "the plaintiff must allege that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant

10

acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (applying New York law) (internal quotation marks omitted); *accord Tera Grp., Inc. v. Citigroup, Inc.*, No. 17 Civ. 4302, 2019 WL 3457242, at *22 (S.D.N.Y. July 30, 2019) (applying New York law). Such claims are subject to a "more culpable conduct standard" that requires that interference "was accomplished by wrongful means or where the offending party acted for the sole purpose of harming the other party." *106 N. Broadway, LLC v. Lawrence*, 137 N.Y.S.3d 148, 157 (2d Dep't 2020) (internal citation omitted). "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *Id.* (quoting *Guard–Life Corp. v. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 449 (N.Y. 1980)). "'The implication is that, as a general rule, the defendant's conduct must amount to a crime or an independent tort.'" *Id.* (quoting *Carvel Corp. v. Noonan*, 818 N.Y.S.2d 1100, 1103 (N.Y. 2004)). "This tort is a difficult one to sustain, with requirements more demanding than those for interference with [the] performance of an existing contract." *Tera Grp., Inc.*, 2019 WL 3457242, at *22 (alteration in original).

The Complaint does not allege facts showing that AST intentionally interfered with any of Plaintiff's business relationships. The allegations do not support a reasonable inference that AST's conduct amounted to a crime or independent tort (as discussed above), nor does the Complaint allege facts showing that AST acted for the sole purpose of harming Plaintiff.

## IV.      LEAVE TO AMEND

Plaintiff seeks leave to amend its Complaint in the event any motion to dismiss is granted. Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). However, "where the plaintiff is unable to demonstrate that he would be able to amend his

11

complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cnty. Of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *accord Dominguez v. Taco Bell Corp.*, No. 19 Civ. 10172, 2020 WL 3263258, at *6 (S.D.N.Y. June 17, 2020).

Plaintiff is denied leave to replead any claims against OTC as they would not survive a motion to dismiss because of OTC's immunity described above. Although the Court doubts that sufficient claims can be pleaded against AST, if Plaintiff believes otherwise, by **October 28, 2021**, it may file a letter seeking leave to replead claims against AST, describing how it would overcome the deficiencies described in this Opinion and appending a proposed Amended Complaint, marked to show changes to the Complaint.

## V. CONCLUSION

For the foregoing reasons, OTC's and AST's motions to dismiss are GRANTED, and OTC is dismissed from the case. Plaintiff may seek leave to replead claims against AST by **October 28, 2021**, as described above. If Plaintiff does not do so or leave is denied, then AST will be dismissed from the case.

The Clerk of Court is respectfully directed to close the motions at Docket Nos. 61 and 63.

Dated: October 14, 2021
      New York, New York

                                  LORNA G. SCHOFIELD
                              UNITED STATES DISTRICT JUDGE